CARTER, Judge.
This is an appeal from the trial court judgment affirming the denial of a commercial use permit by the Planning Advisory Board of St. Tammany Parish.
On September 24, 1984, plaintiff, Park Supply Company, Inc. (Park Supply) purchased certain property situated on Louisiana Highway 59 in St. Tammany Parish for the purpose of erecting a building to house a retail and wholesale plumbing supply business. The property was classified as “R-Rural” pursuant to St. Tammany Parish Land Use Regulatory Ordinance No. 523.[1] Pursuant to Ordinance No. 523, *989 plaintiff applied to the Planning Advisory Board (Board) for a commercial use permit. On November 28, 1984, the Board held a hearing and denied the permit on the grounds that the proposed use would create a hazard to the health and safety of the adjacent residences.
On December 20, 1984, plaintiff appealed the recommendation of the Board to the St. Tammany Parish Police Jury, which upheld the Board’s finding. Subsequently, on December 27, 1984, plaintiff filed suit for a declaratory judgment claiming that the actions of the Board were unlawful and that the proposed use was permissible under the ordinance. On June 27, 1985, the matter was tried, and judgment was signed on September 12, 1985, upholding the decision of the Board. The trial court found that the plaintiff’s proposed use of the property was incompatible with the “R-Rural” classification as set forth in the ordinance and that the proposed use would create a hazard to the health and safety of the people living near the property. In his reasons for judgment, the trial judge stated:
The record establishes and this Court finds that plaintiff planned on operating its business from 7:00 a.m. to 5:00 p.m. Monday through Friday and possibly from 8:00 a.m. to 12:00 noon on Saturday. It will employ six or seven people when it opens its doors for business. If successful, this business could employ up to thirteen people in the future. Plaintiff would require three to four trucks to operate its business, a one-ton stake-body truck and two or three pick-ups for deliveries. Testimony further establishes that plaintiff would expect between 33 and 39 deliveries per month of material and supplies to its business. The largest truck traveling to and from this business would be an 18-wheeler.
The evidence further establishes that the nearest neighbor from the building sought to be constructed under this permit is approximately 150 feet away. There exists a residential area immediately to the south of subject property and across Highway 59 from subject property. The usage of the immediate area located next to subject property is residential.
Based on the evidence presented, this Court finds that the use proposed by plaintiff on subject property is incompatible with the criteria in the R-rural classification set forth in Section 2.101 of the Land Use Regulations Zoning Ordinance No. 523.
Subsequently, on October 3, 1985, plaintiff appealed that decision raising the following issues:
*990 1. Whether plaintiff complied with all the requirements set forth in the ordinance; and
2. Whether plaintiff sustained its burden of proving that the activities of the Board and Police Jury constituted an abuse of discretion.
DISCUSSION
The authority to enact zoning regulations flows from the police power of governmental bodies and is valid if it bears a rational relation to the health, safety and welfare of the public. Folsom Road Civic Association v. Parish of St. Tammany, 407 So.2d 1219 (La.1981); Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1974). Zoning ordinances, like other legislative acts, are presumed to be valid. Furr v. Mayor and City Council of Baker, 408 So.2d 248 (La.1981). The burden of proof is on the plaintiff to show that the zoning ordinance is unconstitutional or was applied to him in an arbitrary or discriminatory manner.
A reviewing court cannot substitute its own judgment; it cannot interfere absent a showing by the appellant or relator that the Board was arbitrary and capricious or abused its discretion. Cross v. City of New Orleans, 446 So.2d 1253 (La.App. 4th Cir.1984), writ denied, 449 So.2d 1359 (La.1984); State ex. rel. Maple Area Residents, Inc. v. Board of Zoning Adjustments, 365 So.2d 891 (La.App. 4th Cir.1978); Roy v. Kurtz, 357 So.2d 1354 (La.App. 4th Cir.1978), writ denied, 359 So.2d 1307 (La.1978); Gertler v. City of New Orleans, 346 So.2d 228 (La.App. 4th Cir.1977), writ denied, 349 So.2d 885 (La.1977), writ refused, 434 U.S. 1068, 98 S.Ct. 1248, 5 L.Ed.2d 770 (1978).
Although, on the one hand, we might disagree with the Board’s findings and, on the other hand, ascribe no manifest error to those findings of the district judge, we are obliged to sustain the Board’s conclusions unless the weight of the evidence in its entirety so strongly preponderates against such conclusions that it compels us to find an abuse of discretion on the part of the Board. Coogan v. Parish of Jefferson, 381 So.2d 1320 (La.App. 4th Cir.1980).
St. Tammany Parish Land Use Regulatory Ordinance No. 523 has been reviewed by the Louisiana Supreme Court and found to be constitutional. In Folsom Road Civic Association v. Parish of St. Tammany, supra, the Supreme Court determined that Ordinance No. 523 complies with constitutional and legislative requirements and that it does not deny due process. The Court went on to say that the Board does not have unbridled discretion to control the development of the parish by granting or denying permits.
Therefore, as the question of the ordinance’s constitutionality has already been decided, we must now determine whether the Board applied the ordinance arbitrarily and capriciously to plaintiff.
The plaintiff’s main objection to the denial of the permit arises from the Board’s interpretation of various phrases in the ordinance, namely “objectionable noise, glare, odor, or air pollution” and “a hazard to health and safety of the adjacent residents.” Plaintiff claims that the ordinance does not define these terms and that there has not been sufficient evidence presented to indicate that any of these alleged problems were apparent.
At trial, testimony was elicited from James S. Drummond, Jr., Vice-President of Park Supply. He testified that the largest trucks that would frequent the property would be 18-wheelers, as well as smaller trucks. These trucks would only make thirty-three to thirty-nine deliveries per month. He testified further that patronage traffic at the site would grow as the business grew, thus creating more traffic for the surrounding area. When asked whether the trucks and cars could create a hazard on Highway 59 due to the necessity of having to slow down to exit, and considering the time it takes larger trucks to accelerate upon entering the highway, Drummond stated that the trucks and larger vehicles could create a traffic hazard around the proposed building.
Plaintiff’s expert, a licensed engineer, testified that Highway 59, which the prop *991 erty fronts upon, had been improved recently and continued to accommodate a great deal of traffic, both automobiles and trucks.
The trial court concluded, and we agree, that the plaintiff did not present sufficient evidence to warrant the conclusion that the proposed use would not endanger the health and safety of the adjacent residents nor cause undue odor, noise, or constitute a nuisance.
Testimony elicited from the Board members consisted of statements that the shoulder of the highway as insufficient to handle the existing load or the extra traffic projected. One of defendants’ experts in land use zoning and planning testified that there could be hazardous situations caused by trucks entering and exiting the highway. Several witnesses testified that they felt the proposed use would constitute a nuisance and cause odor and pollution for this type of establishment to be in the middle of their residential neighborhood.
Therefore, from the evidence presented, we cannot say that plaintiff has borne his burden of showing that the proposed use would not create a hazard or threaten the safety of the adjacent residents. A review of the entire record convinces us that the actions of the Board, subsequently affirmed by the trial court, were not arbitrary or capricious and did not abuse the discretion afforded the Board.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are to be paid by plaintiff.
AFFIRMED.
SHORTESS, J., dissents and assigns reasons.

. St. Tammany Parish Land Use Regulation Ordinance No. 523 provides:
Section 2.1 R-Rural District
2.101 Permitted Uses
1. Any use which does not create a nuisance by way of objectionable noise, glare, odor, or air pollution. Junk yards shall be permitted only where authorized by the St. Tammany Parish Police Jury. This proposed use will require a public hearing before permit issuance as well as the adequate completion of the Parish’s Environmental Assessment Data form (EDA) prior to said hearing. All local, state and federal regulations as regards environmental pollution are to be complied with (Ord. Council Series # 80-35)
2. All Commercial, industrial, religious, institutional, uses and multi-family or condominium uses of three units or more, require review and approval by the Planning Advisory Board before issuance of a permit Applicants for such permits must submit to the Planning Advisory Board plans meeting the following criteria.
*989 a. Use does not create a hazard to health and safety of the adjacent residents.
b. Noise, glare and unsightliness when present are screened by solid fences or walls six feet high or plants, which will grow to this minimum height.
c. Minimum Yard Requirements
Front yard: Front building lines shall conform to the average building lines established in a developed block; in all cases, this front building line shall be setback a minimum of fifty feet (50') from the street line.
Side Yard: There shall be two side yards, one on either side of the principal building, each having a minimum width of ten feet (10')
Rear yard: There shall be a rear yard having a depth of not less than twenty percent (20%) of the depth of the lot, or not less than fifty feet (50') when the lot depth is in excess of 250 feet.
d. Roadway exists (sic) and entrances are located for clear sight distance and safe access to public roadways.
e. Major drainage channels are designed with sufficient culverts and rights-of-way to provide for natural water flow and maintenance of drainage.
f. Disposal of waste and sewerage has been approved by the property local authorities.
g. There be no more than one permit and one use requested for a building to be constructed on a lot or lots of record.
h. Meets the requirements of the Subdivision Ordinance.
i. The applicant will adequately have completed the Parish Environmental Assessment Data Form (EDA) for all proposed industrial uses at the time of permit application.
j. An accurate drainage plan certified by a licensed engineer shall be required as part of the application procedure prior to the issuance of a building permit for the following conditions: (1) all commercial and industrial uses which locate on lots or parcels larger than 1 acre (2) all multi-family uses of 12 units or more and (3) duplex developments on lots or parcels of five (5) acres or more. (Ord. PJ. Series # 85-303).